# CASES AT LAW

DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY.

## AT MARCH TERM, 1860.

......................

THE STATE (JOSEPH M. KAIGHN et al. Prosecutors), vs. BENJAMIN BROWNING, CLERK OF CAMDEN COUNTY, JESSF W. STARR, et al.

1. Where a *certiorari* is brought to set aside the alteration of an incorpor ated school district, the original proceedings of the inhabitants voting suc 1 alteration and the original certificate should be brought into court, and the *certiorari* in such case should be directed to the person or persons having the legal custody of such papers.

2. If the certificate of alteration is left with the county clerk to be recorded, it is there only for a temporary purpose; he is not the legal custodian of the paper, and is not the person to whom a writ of *certiorari* should be directed.

3. The inhabitants of one school district cannot alter, abolish, or absorb another district, without the consent of the latter.

4. School taxes assessed upon property lying in a district illegally annexed to the district that votes the tax, will be set aside upon *certiorari* brought by the persons aggrieved.

5. If the record from the Supreme Court shows that that court has awarded costs on reversal of a judgment or proceedings removed there by *certiorari*, this court will reverse the judgment, as to costs, although the judgment in all other matters be affirmed. In such case the defendant in error is not entitled to costs in this court.

———————

In error to the Supreme Court.

By three writs of *certiorari*, certain proceedings relative to the alteration of school districts, numbers 5 and 7, in the township of Newton, in Camden County, were brought before the Supreme Court. The cases are reported in 3 *Dutcher* 527. In one case the *certiorari* was dismissed, and in the other two the proceedings relative to the alteration of the districts and the assessment of taxes were set aside.

All the cases were removed to this court by writs of error, and were argued together.

*Dudley* and *W. L. Dayton*, for Cope et al.

*P. L. Voorhees* and *Browning*, contra.

The opinion of the court was delivered by

OGDEN, J. In the matters of the complainants of Marmaduke C. Cope and others, representatives of the estate of Isaac Cooper, deceased, and of Joseph M. Kaighn, in his own right, who together alleged that the assessments of taxation for schools, in the year 1858, in Liberty School District No. 5, in the township of Newton, in the county of Camden, were made without legal authority, and should be set aside and for nothing holden touching the property of the prosecutors.

The whole case has been developed upon the argument of three distinct writs of error in the returns to which we have the judgments of the court below upon three *certioraris*, and the papers returned with those writs, and the testimony which was taken under rules of the Supreme Court.

The burthen of the complaint is, that on and before the 5th day of April, 1858, two school districts existed in the township of Newton, contiguous to each other, one of which was incorporated by the name of Liberty District No. 5, and the other remained unincorporated, and was established,

set off, and described as District No. 7 by the town superintendent of public schools for that town; that, on the fifth of April aforesaid, a tax of $2000 was ordered to be raised at a meeting of taxable inhabitants, held in District No. 5, purporting to be for school purposes in that district, and that the township assessor has levied the sum of $685.86, of the amount so voted to be raised upon property of the prosecutors, $365.70 of it on their property, which lies within the limits and bounds of District No. 7, a rural district.

Two of the *certioraris* were amended on the application of Joseph M. Kaighn, as sole prosecutor : both were tested in June term, 1858, and were made returnable to the following November term. The one which probably was first applied for is directed to Starr and others, as trustees of Liberty School District No. 5, of the township of Newton, commanding them to send up " all resolutions and proceedings by them, or by a meeting of the taxable inhabitants of the said district, held on the 5th of April, 1858, had relation to raising, or ordering to be raised, the sum of $2000, in said district, for school purposes, with all things touching and concerning the same."

The writ called for the acts and proceedings of the trustees, and also for the acts and proceedings of the district meeting. The return made, with the schedules annexed thereto, sent up the minutes of the district meeting held on the 5th of April, also the minutes of several meetings of the trustees, held successively on the 20th of March, the 27th of March, the 3d, 5th, and 17th of April, and the 15th of May. In the minutes of the meeting of the taxable inhabitants of District No. 5, held on the 5th of April, it appears that it was resolved that the boundaries of School District No. 5 be altered, so as to take in all the 7th district, called rural ; and that twenty-three votes were polled in the affirmative, and none in the negative.

At a later hour, the same meeting resolved, " that the sum of $2000 be raised by taxation, in addition to the

sum apportioned to *the district* from the township." In the minutes of a meeting of the trustees, held immedia ly after the adjournment of the meeting of the taxable inhabitants, the secretary was ordered to have the certificate of assessment made out, and ready as soon as possible.

At a subsequent meeting of the trustees, held on the 17th of April, it appeared that the certificate of assessment was then signed by the trustees and sworn to, and that the secretary was ordered to send the same to the assessor at once.

At a meeting of the trustees, held on the 15th of May, the secretary reported that he had the assessor's receipt for the certificate, dated 22d of April.

The other *certiorari*, issued at the sole instance of Mr. Kaighn, is directed to Benjamin Browning, clerk of the county of Camden. After reciting that the court wished to be certified of *a certain record of a certificate*, &c., then on record in his office, bearing date the 12th of April, 1858, made by the town superintendent and the trustees of Liberty School District No. 5, altering the boundaries of the said district, the writ directing him to certify and send up *the said record, altering the boundaries of the said school district*, with all things touching and concerning the same.

The clerk annexed to his return to the writ a copy of a paper, which had been directed to him as clerk of the county, dated the 12th of April, 1858, received in his office on the 17th of April, and recorded by him, purporting to have been signed and sealed by the town superintendent and by the trustees of District No. 5. It certified that, by the consent of a majority of the taxable inhabitants of the said district, the same had been altered so that the bounds thereof *then were the following*, to wit, as set out by particular description in the copy.

The purport of his *certificate of return*, attached to the writ, dated the 8th of June, 1858, signed by him as clerk, with the official seal of the county affixed, is as follows.

to wit : that he thereby certifies and sends to the justices of the Supreme Court " the *record* altering the boundaries of Liberty School District No. 5, of the township of Newton, in the county of Camden, with all things touching and concerning the same, as fully and completely as they are on *file* in his office." The writ called *for a certain record of a certificate,* &c., and it directed the clerk to send the *said record altering the boundaries of the said school district ;* and the clerk returns the copy just described, and certifies that he sends up the *record* altering the boundaries of the district.

Two objections have been urged against the legality of this *certiorari* and return—one, that the writ was wrongly directed ; the other, that the clerk has sent a copy of the certificate of alteration, instead of the original. If the clerk was in law the keeper of the certificate of alteration, he should have been directed to send up the certificate itself, and not the record of it. His possession of it at any time was for a temporary purpose, which could be accomplished in a few moments, and even during that time he could not have been considered as having the exclusive right to its custody. He had no interest in it, nor had he any duty to perform with it after it was recorded. He was required to have it copied in his book of miscellanies for the county. As soon as the copy was made, he ceased to have a temporary control over it, as it would thereafter be held subject to removal at any moment' by the trustees of the district ; and he could not have obeyed the command of the writ by parting with and sending up the original. The direction of the writ to him has made him a party to a proceeding involving public rights, which he had no interest to protect. The certificate of the superintendent and trustees belonged to the corporate school district, and its officers were, in contemplation of law, the legal keepers of the paper for the uses of the incorporation. The writ was improperly directed to the clerk of the county ; and if, with his return, he had sent

up the original certificate, the Supreme Court could not have reviewed these proceedings of the district tribunal.

In 2 *Green* 411, the case of *State* v. *The Morris Canal Co.*, the Court said—" When the *certiorari* is in the nature of a writ of error, and the object of it is to affect the record itself, and the court is to hold plea of the record, the record itself is to be sent up, to the end that the judgment of the court may conclude the record," citing *Viner* and *Bac. Ab.* Also, that in cases affecting the acts of inferior tribunals " the question is, who, in legal contemplation, has the custody of the records or *proceedings* required to be certified ?" The writ of *certiorari* should go to such custodian, and if it be improperly directed, nothing can legally be removed by it.

The other objection was also well taken. The book of miscellanies, in which the certificate is recorded in the clerk's office, is not of that grave character as to become a technical record, nor are certified copies of it made evidence by statute, nor is it a *file* of the clerk's office. The certificate is required to be recorded merely for the purpose of giving notice to persons interested in the formation of an incorporated school district, and the bounds thereof; therefore, a copy from the book did not furnish the court with such evidence of the acts of the inferior tribunal as could justify them in adjudicating upon the legality of those acts.

By the act to incorporate trustees of religious societies, it is provided, that after the first trustees are elected, and have taken upon themselves a name, they shall certify such name under their hands and seals, and transmit such certificate to the clerk of the county to be recorded, whereupon they shall be known by their corporate name so certified and recorded    Yet if the legality of an organization of a religious society should be denied, it would hardly be contended that the corporate body could be brought before the Supreme Court by a return to a *certiorari* directed to

the clerk of the county, he having no interest whatever in the matter.

The authorities on these points are too familiar to need a further citation of them at this time. The judgment of the Supreme Court dismissing that *certiorari* was correct, and should be affirmed with costs.

The third writ of *certiorari*, which is tested in November, 1858, and settled in February, 1859, was amended on the application of Marmaduke C. Cope, Stephen P. Morris, William M. Collins, and also of Joseph M. Kaighn, and was directed to Richard Snowden, collector of taxes for the township of Newton, in the county of Camden. It commands him to send the assessments and duplicate thereof, with all things touching and concerning the same, made in the township of Newton, upon the property of Joseph M. Kaighn and upon the property belonging to the estate of Isaac Cooper, deceased, in assessing the taxes for the year 1858. The duplicate was at that time lawfully in his care and custody, for the purpose of his collecting the taxes, and no exceptions have been taken to the direction of *this* writ.

The return made by the collector is accompanied with a schedule showing the different pieces of property of the prosecutors upon which the assessments were levied, and the taxes for different purposes are arranged in separate columns.

The school tax of $685.86, a portion of the sum of $2000 voted to be raised, appears in the return to have been assessed upon property in District No. 5. The evidence shows, and it was not denied on the arguments, that the tax of $73.60 against Mr. Kaighn, and a portion of the tax against the estate of Cooper, amounting to $292.10, both included in the total taxation against them of $685.86, were assessed upon their property in the 7th, or rural district.

The prosecutors contended that the proceedings of the meeting of the taxable inhabitants, in voting the tax

and altering the district, and those of the superintendent and trustees, and that of the trustees in certifying to the assessor, were all unlawful and void, and that the assessments against them for school purposes should be set aside; but it was insisted, in behalf of the defendants, that the portion of the tax which was assessed on property in District No. 5, lying within its boundaries as they were defined before the alleged annexation of No. 7 to it, should not be disturbed, even if the alteration of the district should be held by the court to be void, and the assessments on the property in No. 7 should be set aside; because they say, that the liability of the prosecutors to taxation in the original incorporate District No. 5 was neither created nor increased by the alleged alteration.

The legality of the assessments must be determined by testing such of the proceedings in District No. 5, as we properly have before us in this case, with the requirements of the several acts of the legislature for establishing public schools in the state of New Jersey.

In the 5th section of the act of April 16th, 1846, (found in *Nixon's Digest, p.* 734,) it is provided that it should be the duty of the town superintendent of public schools on or before the 2d Monday in May next succeeding his election, to set off and divide his township into convenient school districts, with power to alter and change them as circumstances might require.

In the 6th section, he is directed, within twenty days after such act of setting off, to prepare a notice in writing describing such districts, appointing therein a time and place for the first district meetings for the election of three or more trustees for the respective districts upon ten days' previous notice given, by setting up a copy of the written notice in three of the most public places within the district ; and he is also required to convene district meetings annually, on the first Monday in April, by giving ten days' notice in writing of the time and place therefor.

The 17th section of the same act, p. 737, is in the words following: "In the erection or alteration of a school district, the trustees of any district to be affected thereby may apply to the township committee to be associated with the town superintendent, and their action shall be final." This section was intended for the protection of the taxable inhabitants of a district against arbitrary and frequent alterations of its lines by the mere despotic volition of the town superintendent. Great oppression and injustice might be exercised by that officer in using an unlimited power to alter and change established districts; and hence the legislature provided a mode whereby his action might be restrained, by giving to a district which would be affected by a proposed change the right to associate the township committee with him in determining upon the extent of such alteration.

This provision in favor of an established district certainly contemplates that the option shall be enjoyed; and in the cases of unincorporated districts, the privilege cannot be exercised unless the town superintendent gives a reasonable previous notice to the trustees of the district to be affected by a proposed alteration, so that they may apply to the township committee to act with the superintendent.

It does not appear, in the schedule returned by the trustees with the *certiorari*, that any notice was given to the trustees of No. 7 that it was contemplated to unite their district with District No. 5; on the contrary, it is conceded that the inhabitants of that district, in pursuance of notices given by the superintendent, were engaged in transacting their own annual district business at the moment when they were swallowed down by the voters of No. 5, *nolens volens*, and their separate existence was sought to be destroyed.

If there was no other substantial defect in the proceedings brought to our notice by the return to this *certiorari*, I am clearly of opinion that the resolutions of the meet-

ing in District No. 5 so far as they sought to affect the inhabitants of District No. 7, or the taxable property therein, are absolutely null and void for want of proper previous notice to the trustees and to the taxpayers of that district, and that the judgment of the Supreme Court should be sustained, so far as it set aside and annulled the proceedings of that meeting, touching the alteration of the boundaries of Liberty School District No. 5.

It is to be noticed that, thus far, I have considered the case in the light afforded by the act of 1846. A supplementary act was approved, on the 14th of March, 1851, which was frequently referred to on the argument. The 8th section provides that the trustees of each school district shall be limited to three resident taxpayers, and that they should be divided into three annual classes, so that one might be elected for three years, in each year after the expiration of the terms of office of those who should be elected at the first annual meeting held under the supplement. The 9th section authorizes the *incorporating* of trustees of school districts, and points out the manner of proceeding.

Exhibit marked B is a certificate of incorporation of Liberty School District No. 5, dated 21st of April, 1855. In the original division of the township of Newton into unincorporated school districts, the district called No. 5 embraced within its limits the territory which afterwards was established as No. 7, or rural.

On the 21st of April, 1855, the trustees of the original unincorporated District No. 5 proceeded to become incorporated; and having adopted the name "Liberty," together with the town superintendent, they certified their name and the boundaries of the said school district, and caused the certificate to be recorded. In fixing the limits of the incorporated District No. 5, they left out and cut off a portion of the old territory of No. 5, and the part lopped off afterwards was established, under the act of 1846, by

the town superintendent, as unincorporated school district No. 7, or rural district.

It is provided, in the 10th section of the supplemental act, that an incorporated district shall not be *abolished or altered* without the consent of a majority of the taxable inhabitants of said district ; and in case the same *should* be done, it is required that the trustees and town superintendent should make and sign ·a certificate thereof, and have the same recorded by the clerk of the county in which said district is situated.    The trustees of Liberty District No. 5 professed to act under this section, in attempting to annex to their district No. 7.    A question was made upon the argument as to the time when the alleged alteration could take effect.    The plaintiffs in error contended that the minutes of the meeting held on the 5th of April show that the consent given for the alteration was obtained there on that day ; but they deny that the vote then taken furnished any legal authority on which the trustees and superintendent could make a new certificate, because the consent of only 23 out of over 100 taxable inhabitants was then and there obtained.    On the other hand, the defendants contended that Exhibit No. 3, purporting to be a " petition or certificate in favor of alteration of District No. 5," having the signatures of some 83 persons, representing themselves to be "taxable inhabitants and legal voters " of Liberty School District No. 5, contains an expression of the consent of a majority of the legal voters, and furnished the basis for the certificate of alteration, which is dated the 12th of April, 1858, and is in evidence in the cases as Exhibit C.

Exhibit No. 3 is without date, but Mr. Paschall has testified that all the names upon it were procured after the day of the district meeting —some 33 of them during the same week—and the others at various times afterwards.

It is entirely immaterial for the result of this case, upon which piece of evidence the expression of legal consent the trustees and town superintendent place themselves.    If upon the vote at the district meeting, their

proceedings in making the new certificate were without the sanction of law, and if the certificate of that act or adjudication was regularly before us, it would be declared on that account to be void. On the other hand, if they relied on the petition which subsequently was gotten up, the certificate of alteration, dated April 12th, could not subject property in the 7th district to a tax voted in No. 5 on the 5th of April before the annexation was made.

The tax of $2000 was directed to be raised under the powers contained in section 11 of the supplement. The requirements of the section should in all respects be fully complied with, and all the facts essential to the validity of an assessment under it should clearly appear. The township assessor is not an officer of any of the school districts within the township, and his only warrant for making an assessment upon a district is the certificate which is provided for in the act.

The section directs that notice of a meeting of the taxable inhabitants of a district to raise money by taxation shall be signed by at least two trustees, and shall set forth the *time* and *place* and *purposes* of the meeting, and shall be set up, in at least three public places in the district, ten days before the day of the meeting; and in case any money shall be ordered to be raised by taxation by a vote of two-thirds of a meeting so convened, two, at least, of the trustees must make out and sign a certificate thereof, under oath or affirmation, that the same is correct and true, and deliver it to the assessor of the township in which the district is situated, who shall assess on the estates of the inhabitants of said school district and on all lands liable to be taxed therein, such sum as shall be ordered to be raised by the said meeting in *the manner aforesaid.*

Exhibit F is a *copy* of the certificate of the trustees to the assesor. The original is dated the 17th of April, 1858, and was made under the hands of the three trustees and the seal of the old incorporated District No. 5. It was

directed to Charles Lippencott, the assessor. It recites that the subscribers were trustees of a school district in the township incorporated by the name of Liberty District, No. 5, which district it professes to set out by metes and bounds. It then certifies that at a meeting of the taxable inhabitants of the *said* district, held at the new schoolhouse in said fifth school district on the 5th day of April, 1858, pursuant to notice, signed by the trustees, setting forth the time and place and purposes of said meeting, and set up in at least three public places in said district ten days before the day of meeting, it was agreed, by the vote of at least two-thirds of the taxable inhabitants so assembled, to raise by taxation the sum of $2000 for school purposes, &c. ; and it states that the certificate is made to the end that the assessor might assess the said sum on the estate of inhabitants, and on all lands liable to be taxed therein, as provided for by the 11th section of the supplemental act.

In the case of *The State* (*James Hodge*, prosecutor,) against *John Hardcastle*, collector of the township of Bridgewater, in the county of Somerset, reported in 2 *Dutcher*, p. 143, the Supreme Court, by Potts, J., said, " the power to impose special taxes is an important one, and the only limit to the power to raise money by tax for the purposes mentioned in the 11th section of the supplement to the 'act to establish public schools' is that which may be fixed by a two-thirds vote of the taxable inhabitants, convened by a notice setting forth the purposes for which they are to be convened. Legal notice to the taxpayers lies at the foundation of the whole authority."

The certificate which was then before the court set forth that notice was given " *in accordance with the act.*" The court said, " it should go further, and state what the notice was, and where and when copies of it were set up, in order that it *may appear* that it was in accordance with the act by something more than the mere allegation of the trustees." The assessment was set aside because it did

not appear upon the face of the certificate that the law had been complied with. This decision was affirmed in the Court of Errors.

Exhibit B is the certificate of incorporation of Liberty School District No. 5. It is dated the 21st of April, 1855, and contains a description of the boundaries of the district as it was then incorporated. Exhibit F, which is a copy of the certificate made to the assessor by trustees elected in District No. 5, as it was incorporated, describes the district which they represent by particular boundaries entirely variant from the boundaries certified in Exhibit B, the certificate of incorporation. It then recites that the taxable inhabitants of the *said* district held a meeting at the school house in said fifth district, on the 5th of April, 1858, pursuant to a notice, signed by them, setting forth the time and place and purposes of the meeting, and set up in at least three public places in the said district ten days before the meeting.

What district was notified ten days before the 5th of April? Not the inhabitants of No. 5 as incorporated in 1855, because the certificate states that the inhabitants of an entire different district met and voted the tax, not the inhabitants of the alleged altered district, because that district had no corporate existence before the 5th of April, 1858. The minutes of the meeting of the taxpayers on that day show that two of the trustees, whose names are to the certificate, were elected in No. 5, as trustees thereof, before the resolution to alter the district was offered; and they have not shown that they afterwards were elected in any district of the same name which embraced the new territory.

I am of opinion that the paper furnished by the trustees of District No. 5 to the assessor, on or before the 22d of April, 1858, did not show that a tax was ordered to be raised in District No. 5 according to law, so as to bind estates and lands in the said district for the payment thereof. The security of taxpayers in this age of progress

3 B*

requires that the powers conferred by special acts of legislation should be exercised in strict conformity with the provisions of such acts, and that the compliance should clearly appear. Under the school law the notices should set forth distinctly the object or objects of the proposed meeting. The resolutions adopted at a meeting lawfully convened should conform to the notice, and they should show on their face for which of the objects named in the notices the tax is voted to be raised; and the certificate of the trustees to the assessor should set out and show that all the prerequisites for making a lawful taxation had been complied with.

A defective certificate cannot be held to be merely an irregular one. That paper confers upon the assessor an authority to levy the taxes, and its substantial correctness is essential to the validity of the assessment based upon it. *The resolution* of the meeting which voted the tax is in the following words: On motion, "resolved, that we raise $2000 by taxation, in addition to the sum apportioned to the district from the township." Whether the tax voted was for the purpose of purchasing land, or for enlarging the schoolhouse, or for paying off existing debts, does not appear. The vote of the meeting, as evidenced by the minutes, was not sufficiently explicit to authorize the trustees to make a certificate to the assessor, and their certificate must be declared to be void and of no validity.

The judgment of the Supreme Court in this case should be affirmed so far as it declares that the certificate furnished by the trustees to the assessor was void; and it should be reversed as to the certificate of alteration made by the town superintendent and the trustees, because the record of their adjudication was not properly before the court. The judgment must also be reversed as to the costs.

The last case involves the legality of the assessment brought up by the return to the *certiorari*, which was directed to the collector of the township of Newton.

The assessment was levied for raising a special tax, resting for its authority upon the certificate made by the trustees to the assessor; and as that certificate, and the resolution of the meeting which it professed to make known, have been held in the case last considered to be essentially defective, the assessment, of necessity, must fall with them. The judgment of the Supreme Court should be affirmed, so far as it sets aside the assessment, and should be reversed as to costs.

It is evident that the parts of the entries in the rules for judgments in the two cases last disposed of, which give costs, were introduced without authority from the justices who heard the arguments, or that their assent was inadvertently given. No reference was made to costs in those cases in the written opinion of Justice Clawson. The error has the effect of depriving the defendant in error in the last case of costs in this court, because the record removed shows that the judgment of the Supreme Court is wrong in that particular.

*For affirmance* (except as to costs)—Judges OGDEN, VREDENBURGH, VAN DYKE, WHELPLEY, COMBS, CORNELISON, SWAIN and WOOD.

*For reversal* (as to costs)—None.

*For affirmance* (as to costs)—None.

*For reversal*—Judges OGDEN, VREDENBURGH, VAN DYKE, WHELPLEY, COMBS, CORNELISON, SWAIN and WOOD.

CITED in *State* v. *Brown,* 2 *Vr.* 3˙6; *State* v. *Garr abrant,* 3 *Vr.* 445, 446.